UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
CALVIN ROWELL, JR.,

        Plaintiff,

  -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
------------------------------------------------------------------ X

<u>NOT FOR PUBLICATION</u>

<u>MEMORANDUM & ORDER</u>

05-CV-1592 (CBA)

AMON, UNITED STATES DISTRICT JUDGE

  Before the Court are cross-motions for judgment on the pleadings by the plaintiff Calvin Rowell ("Rowell") and the defendant Commissioner of Social Security ("Commissioner"). Rowell appeals the final decision of the Commissioner, dated February 22, 2005, in which it declined to review the December 16, 2002 decision of Administrative Law Judge Manuel Cofresi, finding that the defendant was not disabled. For the reasons set forth below, judgment is granted to Rowell, and the case is remanded to the Commissioner solely for a calculation of disability benefits.

**I. Background**

  **A. Procedural Background**

  Rowell filed an application for Social Security Disability Benefits ("SSD") on September 10, 1993, alleging a disability onset date of September 2, 1987. (Tr. 123-126.) Rowell's application was denied initially and on reconsideration. (Tr. 136-138, 142-144.) Rowell requested a hearing by an Administrative Law Judge ("ALJ"), and on October 11, 1999, a hearing was held by ALJ Leonard E. Ryan, at which Rowell was represented by an attorney.

(Tr. 95-122.) In a decision dated December 29, 1994, ALJ Ryan determined that Rowell was not disabled. (Tr. 33-39.) However, on August 4, 1995, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (Tr. 268-270.)

On February 8, 1996, a second hearing was held before ALJ Manuel Cofresi. (Tr. 53-94.) In a decision dated December 23, 1996, ALJ Cofresi determined that Rowell was not disabled. (Tr. 12-21.) That decision became the final decision of the Commissioner on September 29, 1998, when the Appeals Council denied Rowell's request for review. (Tr. 5-7.) That decision was reversed by this Court on April 11, 2000, as the Court instructed the Commissioner to reconsider the assessment of Rowell's credibility. (Tr. 323-44.)

Rowell appeared and testified before ALJ Manual Cofresi at a supplemental hearing held on October 16, 2002. (Tr. 387-399.) In a decision dated December 16, 2002, ALJ Cofresi once more determined that Rowell was not disabled. (Tr. 363-374.) That decision became the final decision of the Commissioner on February 22, 2005 when the Appeals Council denied Rowell's request for review. (Tr. 298-300.) On March 28, 2005, Rowell once more filed a claim in this Court, appealing the Commissioner's decision. 03/28/2005

**B.  Rowell's background**

Rowell was born on March 14, 1957. (Tr. 98.) He was therefore 30 years old at the alleged onset date, and 35 years old on his dated last insured ("DLI"), December 31, 1992. (Tr. 147.) Rowell is a high school graduate and attended two years of college, but did not attain a degree. (Tr. 62.) From 1980 through 1987, Rowell worked as a medical technician in the Air Force from 1980 through 1987. (Tr. 60.) He left the Air Force in 1987, when he was denied re-enlistment due to his migraine headaches. (Tr. 262-265, 370.) The Mental Health Evaluation

2

submitted to the Medical Evaluation Board at that time determined that due to his "periods of headache" he was not "suitable for retention" nor "worldwide qualified." (Tr. at 264-65.) By Rating Decision dated November 6, 1992, Rowell was granted 50% service-connected disability compensation for migraine headaches, increased from 30%, effective December 1, 1987. (Tr. 257.) By Rating Decision dated November 29, 2002 Mr. Rowell's service connected disability compensation was increased to 100%. (Tr. 303.)

     Rowell's first assignment as a medical technician with the Air Force, lasting from 1980 to 1982, was in the maternity ward. Rowell was then reassigned to the emergency room, where he eventually became a supervisor. In that position, his duties included taking care of the patients, including taking temperatures and preparing medications. (Tr. 60, 150, 159.) Rowell's duties as a medical technician included setting up medical instruments for doctors, taking the temperature of patients, and providing medical treatments. (Tr. 60.) In his Disability Report, Rowell indicated that he walked and stood for eight hours or more in a day, and sat two hours or less in a day. (Tr. 150.) He also had to frequently bend and lift patients; he lifted over 100 pounds and frequently lifted over 50 pounds. (Id.) Rowell testified that he injured his back in 1985 or 1986 while transporting a patient who weighed 240 pounds with another technician. (Tr. 100.) Rowell testified that as a result, he stopped working as a medial technician for a period of time and was instead assigned to work as a dormitory manager. (Tr. 162.) When Rowell returned to work as a medical technician, he was detailed to a special care unit where he did not have to lift patients. (Tr. 101.) Prior to working as a medical technician, Rowell was employed by the United States Army National Guard as a clerk typist from February 1975 through July 1980. His duties included typing and filing. (Tr. 60-61.)

3

C.   **Medical evidence**

Rowell's disability claim is predicated primarily on a history of migraine headaches. In March of 1987, Dr. James Walden, examined Rowell for the Medical Evaluation Board. According to the resulting narrative summary, Rowell had a history of migraine headaches dating back to the age of twelve. These resolved themselves until the age of eighteen, when Rowell had another attack of severe headaches, although he did not seek any medical attention at that time. (Tr. 262-65.) In 1980, Rowell's headaches resumed, occurring over a two-month time period approximating one a month, although he did not seek medical treatment at that time. (Id.) Between November 1984 and September 1986, Rowell reported making 44 visits to the emergency room with complaints of severe refractory headaches associated with nausea and vomiting. (Id.) In each of November and December of 1986, Rowell had at least 6 visits to the emergency room because of headaches. (Tr. at 264.)

Dr. Walden began seeing Mr. Rowell in the spring of 1985, when he was diagnosed with probable migraine headaches. (Tr. 262.) Rowell was subsequently given a series of treatments, including a trial treatment of Inderal, which did not provide any significant relief, oral and parenteral narcotics, which provided varying relief, an antidepressant therapy consisting of Elavil, which did not provide any significant relief, and Midrin, which was ineffective. (Tr. 262-263.) Rowell's medications at the time of the March 1987 evaluation included Cardizem and Elavil. (Tr. 263.) Other treatment included referrals to mental health treatment and counseling on methods of stress management. (Id.)

During the March 1987 examination, Dr. Walden noted no significant abnormal findings (Tr. 263-264.) However, he summarized that Rowell suffered from severe recurrent headaches

4

since the age of 12, with increasing frequency and duration, and some disability. (Tr. 264.) Dr. Walden reported that mental health evaluations indicated that the headaches increased in frequency as a result of stress, and that Rowell had shown some noncompliance with regards to stress management and specific directions for his medications. Dr. Walden recommended that Rowell be given a permanent S4 profile because of his frequent and uncontrollable recurring and debilitating headaches, and stated that Rowell was not "suitable for retention" in the Air Force, nor was he "worldwide qualified." (Tr. 265.)

On November 15, 1989 and January 4, 1990, Rowell was seen in the neurology clinic of the VA Medical Center with complaints of headaches and photophobia. (Tr. 245.) Rowell was diagnosed with migraine headaches and prescribed Elavil. (Tr. 241.) On September 14, 1990, Rowell presented to the emergency room, complaining of weakness in his left leg and headaches for the previous 2 months. (Tr. 238-239.) He was diagnosed with migraines and referred to neurology. (Tr. 239.) On October 11, 1990, Rowell was evaluated in the neurology clinic. He complained of weekly headaches with photophobia, which had recently increased in frequency, and depression. (Tr. 236.) He was diagnosed with migraines and prescribed Elavil. (Id.)

On November 28, 1990, Rowell returned to the neurology clinic, indicating some improvement on Elavil. (Tr. 234.) He complained of intermittent numbness in the left side of his face, numbness in the ulnar aspect of the left hand, and the lateral aspect of the left foot. Examination revealed 4/5 weakness of the left upper and lower extremities and decreased sensation on the left. Rowell was he diagnosed with questionable left-sided weakness and migraine headaches and his Elavil dose was increased. (Id.)

On February 13, 1992, Rowell returned to the neurology clinic, complaining of increased

5

headaches and stress and decreased sensation on the left-side of his body. (Tr. 233.) He was referred to psychiatry and instructed to follow-up after his psychiatry evaluation. (Id.) In a letter dated February 20, 1992, Dr. C.R. Kowalski, staff psychiatrist, noted that Rowell was seen in the emergency room and was referred to Dr. Goloff in psychology for stress management for his migraines. (Tr. 261.) Between March 4, 1992 and April 30, 1992, Dr. Goloff treated Rowell with stress management/biofeedback therapy. (Tr. 230.) Rowell reported some relief.

On September 21, 1992, Rowell returned to the VA Medical Center, complaining of 3-4 headaches a month, 6-7 episodes, which last for hours to days at a time. (Tr. 222.) Rowell was diagnosed with migraines and sent for laboratory testing and referred to psychiatry again. (Id.)

On February 1, 1993, just after his date last insured, Mr. Rowell continued to complain of migraines with aura, photophobia, slurred speech, and tingling before migraines, unchanged from his previous complaints. (Tr. 221) He was diagnosed with migraines and prescribed Prozac and Fioricet. (Id.) Rowell returned to the VA Medical Center on March 8, 1993 with some improvement in the severity of his headaches, although they were just as frequent. (Tr. 220.) He
was diagnosed with migraines and mild hypertension and Prozac was continued. (Id.)

On April 26, 1993, Rowell returned to the VA Medical Center, complaining of severe migraine headaches in the left side of his head with nausea. The attending physician diagnosed acute migraine headache, prescribed Tylenol, and referred Rowell to neurology. (Tr. 219.)

On August 4, 1993, Rowell was seen in the orthopedic clinic of the VA Medical Center with complaints of right knee pain and back pain that radiated to the left lower extremity (Tr. 213.) Examination revealed tenderness of the patella and crepitus with range of motion, and

6

decreased flexion in the lumbar spine as well as tenderness and decreased sensation in the left lower extremity. (Id.) He was diagnosed with right patellofemoral joint/chondromalacia. (Tr. 214.) It was recommended that Mr. Rowell have a CT scan of the lumbar spine and follow-up. (Id.) A January 5, 1994 lumbar spine MRI revealed degenerative arthritis, degenerative disc disease at L4-5 and L5-S1, and posterior disc bulges at L4-5 and L5-S1. (Tr. 202.)

Rowell was evaluated in the pain clinic at the VA Medical Center on February 25, 1994 for complaints of migraines and lower back pain. (Tr. 195.) Examination revealed limited flexion, and pain to the right buttock with lateral flexion that radiated down the foot on the right with tingling at times. He was treated with Inderal and back exercises and was instructed to follow-up for possible epidural injection. (Id.)

On December 27, 1994 Rowell reported to the VA Medical Center neurology clinic that he had 10 episodes of migraines over the previous two months. (Tr. 203.) He was diagnosed with complicated migraine headaches and his Inderal was increased. (Id.) On July 2, 1995, Rowell was seen in follow-up by neurology, and was diagnosed with hypertension and controlled and continued attacks of migraines. (Tr. 215-16.)

On April 29, 1997 evaluation, Dr. Goldstein, Clinical Professor of Psychiatry at the Columbia University College of Physicians and Surgeons, conducted an examination of Rowell, including a comprehensive psychiatric examination, an anamnesis, and a mental status examination. Dr. Goldstein diagnosed depressive disorder, not otherwise specified, combined with anxiety depressive disorder that is an emotional response to chronic pain syndrome and loss of function. Dr. Goldstein gave a "poor" prognosis and opined that it was very likely the condition was permanent and irreversible. Dr. Goldstein opined that "[a]s a result of his

7

psychiatric and neurological conditions, his functioning in all areas has deteriorated to a significant extent. He is unable to function at any job in the national economy." (Tr. 288-91.)

On June 2, 1997, Dr. Robert Goldstein completed a Mental Residual Functional Capacity Assessment, in which he opined that Rowell was markedly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, his ability to sustain ordinary routine without supervision, his ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to be aware of normal hazards and take appropriate precautions. (Tr. 293-294.) Dr. Goldstein opined that Rowell was moderately limited in his ability to understand and remember detailed instructions, his ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to work in coordination with or proximity to others without being distracted by them, ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, ability to respond appropriately to changes in the work setting, and his ability to set realistic goals or make plans independently (Tr. 293-295.)

In a narrative dated February 22, 2002, Dr. Lawrence Ottaviano noted that Rowell had been under his medical care since 1996 for chronic back pain, severe and constant migraines, and hypertension. (Tr. 348.) Dr. Ottaviano opined that "Rowell's disabling headaches have prevented him from being employed since approximately 1989." (Tr. 348.) Dr. Ottaviano noted that the records showed Mr. Rowell had undergone numerous treatments, none of which had significant effects.

    **C.**    **Rowell's testimony**

8

Rowell testified at each of the three hearings regarding his headaches during the period in question, 1987, his date of alleged onset of disability, through 1992, his date of last insurance. At his 1994 hearing, Rowell testified that in 1987, he had seven headaches a month that would last between three and seven days, and that sometimes these episodes required hospitalization. (Tr. 103.) Rowell testified that his application for re-enlistment in the Air Force had been denied in 1987 because he had been hospitalized several times for treatment of migraines. (Tr. 105, 112.) After leaving the military, Rowell attended college for two years from 1990 to 1992, but was unable to complete his criminal justice degree because of the migraines and back problems. (Tr. 62-63.)

At the 1996 hearing, Rowell testified that he experienced migraine pain between 1987 through 1992 "continuously, all the way through." (Tr. 65.) Rowell stated that from October 1987 through December 1992, he had migraine episodes seven, eight, or twelve times in a month, lasting one to three days. (Tr. 76-68.) He stated that between 1987 and 1990, he did not receive any ongoing medical treatment, but had been treated at the Veteran's Administration ("VA") Medical Center's on an emergency basis. (Tr. 73.) He stated that sometimes he would be hospitalized for a week. (Tr. 68.) Rowell testified that he stays at home, mostly watching television, having adjusted it to a darker setting so that the light it emits does not bring on a migraine. (Tr. 74-76.) He does no household chores except for light straightening of the room. (Tr. 74-75.) He has not driven a car since before the date of onset. (Tr. 77, 79.) He does not use public transportation, as his father, with whom he lives, drives him where he needs to go. (Tr. 80-81.) In addition, his back pain limits his ability to walk, as he can only walk half a block before he must stop and rest. (Tr. 83.) He sometimes uses a cane to assist in walking. (Id.) He

9

also estimated that he can stand no longer than 20 minutes before pain sets in. (Tr. 84.)

At his 2002 hearing, Rowell testified that his migraines had become more severe. (Tr. 391.) He estimated that in 1987 he had four to six headaches a month, that his headaches in 1996 were more severe, but was unable to recall the frequency of his headaches in 1996 versus 1987. (Tr. 394.) Rowell testified once more that he applied for re-enlistment in the Air Force after his tour of service ended in 1987, but his application was denied because of his migraines and back problems. (Tr. 392, 394.)

## II.   Analysis

### A.   Standard of review

To review the Commissioner's decision, the Court must determine whether the Commissioner applied the correct legal standard, see Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999), and whether the decision is supported by substantial evidence, see 42 U.S.C. § 405(g); Brown v. Apfel, 174 F.3d 59, 61-62 (2d Cir. 1999). In addition, while a reviewing court must pay deference to an administrative law judge's assessment of a claimant's credibility, Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984), a credibility determination, like all of the Commissioner's findings, must be supported by substantial evidence, Aponte v.Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that credibility findings must be supported by substantial evidence); Bischof v. Apfel, 65 F.Supp. 2d 140, 147 (E.D.N.Y. 1999).

Substantial evidence is "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), and requires enough evidence that a reasonable person "might accept as adequate to support a conclusion," Brown, 174 F.3d at 62-63. Furthermore, in determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine

the entire record, including contradictory evidence and evidence from which conflicting interferences can be drawn." Id. at 62 (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

Upon review, the court "shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand to the Commissioner for further development of the evidence is appropriate when "the administrative record contains gaps" and when "further findings would so plainly help to assure the proper disposition of [the] claim." Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004) (quoting Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (citations omitted)). However, "where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits." Id. at 385-86 (citing Rosa, 168 F.3d 83).

### B. Availability of Federal Disability Benefits

Federal disability insurance benefits are available to those individuals who are "disabled" within the meaning of the Social Security Act ("the Act"). See 42 U.S.C. § 423(a), (d). To be eligible for disability benefits under the Act, the claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

11

The Social Security Administration has established a five-step test for assessing disability claims. See 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. If he is not, the ALJ next determines whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant's impairment, or combination of impairments, is severe, the ALJ determines whether his impairment or combination of impairments meets or medically equals one of the listed impairments in Appendix 1 of the regulations. If so, the claimant is presumptively disabled without considering vocational factors such as age, education, and work experience. However, assuming the claimant does not have a listed impairment or its equivalent, the ALJ determines whether the claimant has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the ALJ determines whether there is other work exists is significant numbers in the national economy that accommodates his residual functional capacity and vocational factors. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998); Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). The claimant bears the burden of proof as to the first four steps, and the Commissioner bears the burden of proof as to the fifth step. See Schaal, 134 F.3d at 501 (citing Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R. §§ 404.1520, 416.920).

### C. Merits of Rowell's claim

In the instant case, ALJ Cofresi determined that Rowell's combination of impairments, including migraines and knee and back problems, was severe based upon 20 C.F.R § 404.1520(b), but that his impairments did not meet or medically equal one of the listed

12

impairments in Appendix 1, Subpart P, Reg. No 4, such that he was not presumptively disabled. (Tr. at 369.) Furthermore, the ALJ found that Rowell retained the residual functional capacity to perform light work, and therefore could return to his past relevant work both as he performed it and as it is generally performed in the national economy. (Tr. 363-374)

The ALJ's decision rested primarily on his determination that Rowell's testimony was not credible. (Tr. 370.) Dr. Harold Benson, the medical expert who testified at the 1996 hearing, testified that if Rowell's testimony were credible, he would meet the Medical Listing of 12.07, somatoform disorder, such that he would be presumptively disabled. (Tr. 88-91.) Medical Listing 12.07 is classified as:

> Somatoform Disorders: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> > A. Medically documented by evidence of one of one of the following:
> > 1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often, and alter life patterns significantly; . . .
> >
> > B. Resulting in at least two of the following:
> > 1. Marked restriction of activities of daily living;
> > 2. Marked difficulties in maintaining social functioning;
> > 3. Marked difficulties in maintaining concentration, persistence, or pace;
> > 4. Repeated episodes of decompensation; each of extended duration.

Dr. Benson testified that the "A" criteria of Medical Listing 12.07 was evidenced by the medical record and the "B" criteria was satisfied by Rowell's statements of marked restrictions in daily living, difficulties in maintaining social functioning, and deficiencies of concentration. (Tr. 90-91.) Accordingly, ALJ Cofresi recognized in both his 1996 and 2002 decisions that "[t]he primary issue in this case . . . is the claimant's credibility." (Tr. at 370, 18-20.)

After the 1996 decision, this Court remanded the case for the ALJ to revisit his credibility

determination. The ALJ's credibility determination relied in part upon his assessment that Rowell has testified that his headaches "have remained essentially the same since [1980]" but that he "remained in the military service until 1987." (Tr. at 20.) However, the Court found that the colloquy regarding the frequency and severity of Rowell's headaches since 1980 was "ambiguous"; although Rowell seemed to testify that his headaches were of same the severity in 1980 as in 1987, he did not testify that they were of the same frequency. (Tr. 342-43.) That is, he did not testify that his headaches "remained essentially the same." In addition, the Court disagreed with the ALJ's determination that Rowell could work while experiencing these headaches. The Court noted that Rowell's headaches were so severe that "it cause[d] him to ultimately have to quit" the army. (Tr. 342.) Thus, the Court found that it was "not appropriate" to use Rowell's attempt to continue working to determine that he was not credible. (Id.)

However, upon remand, ALJ Cofresi determined once more that Rowell's testimony regarding his subjective complaints was not credible. The ALJ reexamined Rowell's testimony from the 1994 and 1996 hearings, describing the testimony as follows:

> In between 1987 through 1982, he experienced the pain 'continuously, all the way through.' The headaches were usually on the right side, but also on the left side as well. There was numbness through the left side of the face, left hand and on the bottom of his left foot. He continued to testify that 'out of the week . . . three days out of the, out of the week" and that they usually lasted for three days. He then changed his testimony to episodes that occurred seven or eight times or 12 times in a month, usually lasting for three days, sometimes one day, and sometimes he had to be hospitalized for a week.

(Tr. 370.) In addition, the ALJ noted that at the 2002 hearing, Rowell "was unable to recall the frequency and degree(s) of severity of his migraine headaches during the period of adjudication." (Tr. 370.) The ALJ also emphasized, once again, that Rowell's "application for re-enlistment [in 1987] reveals that the claimant was not only willing to return to work, but that he felt physically

14

able for the job." (Id.) In addition, the ALJ noted that "[t]he claimant's allegations are not supported by the objective clinical evidence." (Tr. 371.) Accordingly, the ALJ found that "the claimant's allegations regarding his limitations are not credible." (Tr. 373.)

Although the Court recognizes that generally determinations of credibility are uniquely the province of the fact finder, in this case, the Court concludes that the ALJ's credibility determination is not supported by substantial evidence. See, e.g., Janas v. Barnhart, 451 F. Supp. 2d 483, 504 (W.D.N.Y. 2006) (ALJ's credibility determination was not supported by substantial evidence); Bischof v. Apfel, 65 F.Supp. 2d at 147 (same). First of all, the ALJ's credibility determination relied on part in his determination that Rowell's "allegations are not supported by the objective clinical evidence." The ALJ noted that Rowell's physical examinations were normal, that "[h]e was neurologically intact," that he had "no cerebella dysfunction," and that a CT scan and electroencephalogram were "within normal limits." (Tr. 371) However, as explained above, the question of Rowell's credibility is relevant to determining whether he meets Medical Listing 12.07, Somatoform disorder, such that he is presumptively disabled. The listings describe "Somatoform disorders" as "Physical symptoms for which there are *no demonstrable organic findings or known physiological mechanisms*." 20 C.F.R. Subpart P, Appendix I (Listing of Impairments), Medical Listings 12.07 (emphasis added). Accordingly, in determining whether Rowell meets Medical Listing 12.07, it is not relevant whether Rowell was "neurologically intact" or whether his CT scans were normal; indeed, a physiological explanation for Rowell's migraines would be inconsistent with a finding of somatoform disorder.

Furthermore, Dr. Benson, the medical expert who testified at the 1996 hearing, stated that the medical record established Part A of Medical Listing 12.07, that is "[a] history of multiple

physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often, and alter life patterns significantly. . . ." (Tr. 90.) According to Dr. Benson's testimony, the question of Rowell's credibility was relevant to whether Rowell had established Part B, requiring at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration.[1] (Tr. 90-91.) Quite apart from the testimony of Rowell, the medical evidence of record supports a finding that Rowell has established Part B. In particular, Dr. Goldstein's residual functional capacity assessment showed marked restriction of activities of daily living, marked difficulties in maintaining concentration, persistence, and repeated episodes of decompensation. (Tr. at 288-95.)

In addition, the Court concludes that the ALJ's apparent determination that Rowell's testimony regarding his headaches was inconsistent is not supported by a careful reading of the record. The ALJ stated that Rowell "was unable to recall the frequency and degree(s) of severity of his migraine headaches during the period of adjudication" at his 2002 hearing. As Rowell testified in 1996, his recollection was that he experienced migraine pain between 1987 through 1992 "continuously, all the way through." (Tr. 65.) It is unreasonable to expect Rowell to recall, six years after his 1996 testimony and fifteen years after the period in question, more detailed information about his medical history and his subjective complaints. Furthermore, the Court

---

[1] Dr. Benson testified that there were "no conflicts in the record" and "nothing to contradict" Rowell's testimony (Tr. at 89-90) and that, in his opinion, Rowell "meets the listings for 12.07." (Tr. at 89.) In particular, Dr. Benson testified that the "B" criteria was satisfied by Rowell's statements of marked restrictions in daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration. (Tr. 90-91.)

does not find any significant inconsistencies in Rowell's 1994 and 1996 testimony. Rowell initially testified that between 1987 through 1992, he experienced migraine pain "continuously, all the way through." (Tr. 65-66.) When pressed by the ALJ to be more specific, he appeared to testify that when he got a migraine, it lasted two to three days. (Tr. 66-67.) However, Rowell expressed confusion as to precisely what the ALJ was asking him. (Tr. 67.) Upon further clarification, Rowell indicated that he sometimes had seven to nine episodes a month, and he sometimes had as many as twelve episodes a month. (Id.) The average episode lasted three days, although sometimes they lasted one day and sometimes lasted as long as a week, although Rowell reiterated his earlier statement that he felt like he was continuously experiencing pain. (Tr. 67-68.) Thus, although Rowell's headaches may not have occurred like clockwork, on a definite schedule, with a definite duration, his testimony is consistent with that of someone experiencing very regularly occurring, debilitating headaches.

Finally, the ALJ improperly extrapolated Rowell's ability to work from his desire to re-enlist in the armed forces. The evidence of record was clear; although Rowell may have wished to re-enlist in the Air Force in 1987, the Air Force would not allow him to do so. (Tr. 370.) Dr. Walden determined in his Mental Health Evaluation, and informed the Medical Evaluation Board, that as a result of his "periods of headache" Rowell was not "suitable for retention nor is he worldwide qualified." (Tr. 264-65, 370, 392.) Dr. Walden further stated that Rowell has "frequent and uncontrollable recurring and debilitating headaches" which have "caused [him] to unavoidably miss work assignments." (Tr. 265.) Accordingly, this evidence supports Rowell's claim that, as of 1987, his debilitating headaches had become so frequent as to render him unable to work, notwithstanding his desire to continue working.

In sum, the Court finds that the ALJ's determination that Rowell's subjective complaints are not credible is not supported by substantial evidence. The Court finds it unnecessary to remand the case to the ALJ, as there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," Butts v. Barnhart, 388 F.3d at 385-86; see also Janas v. Barnhart, 451 F. Supp. 2d at 504 (remand solely for calculation of benefits where "there are no gaps in the administrative record" and "ALJ's erroneous discrediting of Plaintiff's subjective complaints substantially undermines the ALJ's decision"). The record is complete after three hearings, and according to the medical expert, Dr. Bergen, Rowell's testimony, if credited, establishes that he meets Medical Listing 12.07 such that he is presumptively disabled. Furthermore, Rowell's application for benefits has now been pending for approximately fourteen years, an additional factor weighing in favor of the Court's ruling. Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000) ("[W]e believe this disposition [remanding solely for calculation of benefits] to be particularly appropriate given that [plaintiff's] application has been pending more than six years."). Accordingly, the Court finds that it is appropriate to remand this matter solely for the calculation of benefits.

## CONCLUSION

The Secretary's motion is denied and Rowell's cross-motion seeking reversal of the administrative judgment is granted. The case is hereby remanded to the Secretary for calculation of benefits.

SO ORDERED.

Dated: Brooklyn, New York
March 30, 2007

                                                  Carol Bagley Amon
                                                  United States District Judge